IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| LANCE CONWAY WOOD,<br><br>    Plaintiff,<br><br>    v.<br><br>SUE WASHBURN, Superintendent of Eastern Oregon Correctional Institute ("EOCI"); MOLISSA NOFZIGER, Assistant Inspector General for Oregon Department of Corrections ("ODOC"); JERRY PLANT, Inspector 3 FOR ODOC; and HEATHER NEVIL, Hearing Officer for EOCI, all named defendants are sued in their individual and official capacities,<br><br>    Defendants. | Case No. 2:20-cv-00362-SB<br><br>**OPINION AND ORDER** |

**BECKERMAN, U.S. Magistrate Judge.**

Plaintiff Lance Conway Wood ("Wood"), an adult in custody ("AIC") at the Eastern Oregon Correctional Institution ("EOCI"), filed this civil rights action under 42 U.S.C. § 1983 against EOCI Superintendent Sue Washburn ("Washburn"), Oregon Department of Corrections ("ODOC") Assistant Inspector General Molissa Nofziger ("Nofziger"), ODOC Inspector Jerry Plant ("Plant"), and EOCI Hearings Officer Heather Nevil ("Nevil") (collectively, Defendants").

PAGE 1 - OPINION AND ORDER

Wood alleges that Defendants retaliated against him for exercising his right of access to the courts and deprived him of due process during disciplinary proceedings. Currently before the Court is Wood's Motion for Preliminary Injunctive Relief. (ECF No. 7.) The parties have consented to the jurisdiction of a U.S. Magistrate Judge pursuant to 28 U.S.C. § 636. For the reasons discussed herein, the Court denies Wood's motion.

## FACTUAL BACKGROUND

Wood was employed as a legal clerk at the EOCI law library until November 6, 2019. (Compl. ¶ 9.) While Wood was working in the law library, he requested permission from Washburn to meet with other AICs to prepare to file a class action challenging conditions of confinement at EOCI. (Compl. ¶ 13.) Wood received no response from Washburn regarding his proposal. (Compl. ¶ 14.)

On October 21, 2019, Wood, along with three other AICs, were required to provide urine samples. (Compl. ¶ 15.) Another AIC gathered the urine samples, and Wood raised concerns about the handling of the urine samples. (Compl. ¶ 16.) The AIC gathering the urine samples spilled urine from other cups on his hands, including urine from an AIC who was taking Tramadol. (Compl. ¶ 18.) Wood alleges the process of urine collection was not in compliance with prison regulations. (Compl. ¶ 21.)

On November 6, 2019, Wood's urine sample tested positive for Tramadol, which resulted in his transfer to the segregation unit and a misconduct report. (Compl. ¶ 22.) Wood's urine sample was collected on October 21, 2019 at around 7:20 p.m., but the misconduct report stated that the urine sample was collected at 1:16 p.m. (Compl. ¶¶ 23-24.)

On November 11, 2019, Wood appeared in front of Nevil for a misconduct hearing and raised the issue of an AIC handling his urine sample. (Compl. ¶¶ 25-26.) Nevil stayed the

hearing and commenced an investigation into Wood's allegations, but the investigator found "no foul" with the urine collection process. (Compl. ¶¶ 26, 28.) The AIC who gathered Wood's urine sample later lost his job for tampering with urine samples and was found to be in possession of pills. (Compl. ¶ 32.)

Wood's hearing resumed on December 3, 2019. (Compl. ¶ 34.) Nevil denied Wood's request to review the video footage, investigation report, toxicology report, and other evidence. (*Id.*) Wood was convicted of Contraband I, and received a sentence of 28 days, 14 days loss of privileges, a $57.30 fine, and reduction of incentive level. (Compl. ¶ 35.) On review, Washburn affirmed Wood's conviction. (Compl. ¶ 39.) On January 23, 2020, Wood filed an administrative complaint challenging his conviction, but Nofziger affirmed the conviction. (Compl. ¶¶ 41-42.)

## ANALYSIS

### I.   LEGAL STANDARDS

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest."[1] *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008) (citations omitted). "When the government is a

---

[1] The Ninth Circuit also provides an additional preliminary injunctive relief test: the "serious questions" test. *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131-32 (9th Cir. 2011). Under this test, "'serious questions going to the merits' and a hardship balance that tips sharply toward the plaintiff can support issuance of an injunction, assuming the other two elements of the *Winter* test are also met." *Id.* at 1132. However, where, as here, Plaintiff seeks a mandatory injunction, courts decline to apply the "serious questions" standard. *See, e.g.*, *P.P. v. Compton Unified Sch. Dist.*, 135 F. Supp. 3d 1126, 1135 (C.D. Cal. 2015) ("Because Plaintiffs seek a mandatory injunction, the Court declines to interpret the 'serious questions' standard for purposes of the Motion as inconsistent with the Ninth Circuit's guidance that a mandatory injunction not issue in 'doubtful cases' and not be granted 'unless the facts and law clearly favor the moving party.'").

PAGE 3 - OPINION AND ORDER

party, [the] last two factors merge." *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014) (citing *Nken v. Holder*, 556 U.S. 418, 435 (2009)).

A "mandatory injunction orders a responsible party to take action" and is "particularly disfavored." *Marlyn Nutraceuticals, Inc. v. Mucos Pharma GmbH & Co.*, 571 F.3d 873, 879 (9th Cir. 2009) (citations and quotation marks omitted); *see also Innovation Law Lab v. Nielsen*, 310 F. Supp. 3d 1150, 1156-57 (D. Or. 2018) (noting that the "already high standard for granting a TRO or preliminary injunction is further heightened when the type of injunction sought is a 'mandatory injunction.'" (citing *Garcia v. Google, Inc.*, 786 F.3d 733, 740 (9th Cir. 2015))). A plaintiff requesting a mandatory injunction must "establish that the law and facts *clearly favor* her position, not simply that she is likely to succeed." *Innovation Law*, 310 F. Supp. 3d at 1157 (quoting *Garcia*, 786 F.3d at 740).

## II.   DISCUSSION

Wood asks the Court to enter a mandatory injunction requiring Defendants to return him to his job at the EOCI law library, compensate him for lost wages, and reinstate his incentive level. (Mot. at 2.) Wood asserts that he is likely to succeed on the merits of his case, and will suffer irreparable harm in the absence of a preliminary injunction due to the "long term consequences" of losing his job and incentive level. (Mot. at 11; Reply at 15.) Wood also alleges that absent injunctive relief, Defendants will continue to chill his First Amendment rights and retaliate against him. (Mot. at 12; Reply at 15-16.)

To obtain preliminary injunctive relief, Wood must demonstrate that he "'is likely to suffer irreparable harm in the absence of preliminary relief.'" *Boardman v. Pac. Seafood Grp.*, 822 F.3d 1011, 1022 (9th Cir. 2016) (quoting *Winter*, 555 U.S. at 20). "[S]peculative injury" is not enough. *Boardman*, 822 F.3d at 1022 (quoting *Caribbean Marine Servs. Co., Inc. v.*

*Baldrige*, 844 F.2d 668, 674 (9th Cir. 1988)). "'A plaintiff must do more than merely allege imminent harm sufficient to establish standing; a plaintiff must *demonstrate* immediate threatened injury as a prerequisite to preliminary injunctive relief.'" *Boardman*, 822 F.3d at 1022 (quoting *Caribbean Marine*, 844 F.2d at 674).

To support his allegations of an immediate threatened injury, Wood points to the "long term consequences" of losing his job and incentive level. However, long term consequences, by their very nature, do not rise to the level of immediate harm. *See McLittle v. Duncan*, No. 03-1187-AS, 2007 WL 1201491, at *7 (D. Or. Apr. 18, 2007) ("[P]laintiff has not established that . . . a possibility of irreparable harm exists . . . if he is not reinstated in his former prison job."). Wood speculates that Defendants will continue to retaliate against him, but has provided no evidence of any further alleged retaliation against him following the 2019 events in question. Wood also vaguely alleges ongoing infringement of his First Amendment rights without preliminary injunctive relief, but has not alleged that he is currently unable to access the law library nor that he is unable to submit grievances or file lawsuits while not working in the law library.[2] *See Cohea v. Adams*, No. 1:08-cv-01186-LJO-YNP PC, 2009 WL 4017138, at *2 (E.D. Cal. Nov. 18, 2009) ("Plaintiff must support his motion for a temporary restraining order with certain minimal details, such as what specific deadline he is facing, what type of pleading he has to prepare, what law library resources he needs, and how much time in the law library he needs.

---

[2] Wood submits evidence that other AICs are fearful of alleged retaliation if they file grievances related to Woods' threatened class action (*see* Second Decl. of Lance Wood, Ex. D at 9), but any alleged harm to others is not relevant to the Court's analysis. *See Winter*, 555 U.S. at 20 ("A plaintiff seeking a preliminary injunction must establish that . . . *he* is likely to suffer irreparable harm in the absence of preliminary relief. . . .") (emphasis added). In any event, Wood does not explain how immediately returning him to his job and incentive level would remedy other AICs' concerns about filing grievances.

PAGE 5 - OPINION AND ORDER

The Court cannot determine whether Plaintiff faces relevant immediate injury unless Plaintiff can provide the Court with these details.").

For these reasons, Wood has failed to demonstrate that he is likely to suffer irreparable harm in the absence of preliminary relief. Accordingly, the Court declines to address the other factors and denies Wood's motion for preliminary injunctive relief. *See Florence v. Kernan*, 813 F. App'x 325, 326 (9th Cir. 2020) ("The district court did not abuse its discretion in denying [California state prisoner's] motions for a preliminary injunction because [he] failed to establish that he was likely to suffer irreparable harm." (citing *Boardman*, 822 F.3d at 1022)); *Reed v. Nev. Dep't of Corr.*, 691 F. App'x 843, 844 (9th Cir. 2017) ("The district court did not abuse its discretion by denying [Nevada state prisoner's] requests for mandatory injunctive relief because [he] failed to establish that he is likely to suffer irreparable harm in the absence of such relief.") (citations omitted).

## CONCLUSION

For the reasons stated, the Court DENIES Wood's Motion for a Preliminary Injunction (ECF No. 7).

**IT IS SO ORDERED.**

DATED this 14th day of September 2020.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge